# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| STEVE PILLOW, | ) |
| Plaintiff, | ) Case No. CV 04-06472 AJW |
| v. | ) |
| | ) MEMORANDUM OF DECISION |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | ) |
| Defendant(s). | ) |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

## Administrative Proceedings

The procedural facts are summarized in the Joint Stipulation. [See JS 2-3]. Plaintiff filed an application for SSI benefits on May 9, 2001, alleging disability due to diabetes, arthritis, foot pain, hypertension, and fatigue.[1] Following an administrative hearing, plaintiff's application for SSI benefits was denied by Administrative Law Judge Peggy Zirlin (the "ALJ")

---

[1] Plaintiff subsequently alleged a cerebrovascular accident on September 19, 2002 that contributed to his disability. [See Administrative Record ("AR") 21, 59-60].

in a written decision issued June 7, 2003. [AR 19-25]. The ALJ noted that plaintiff had filed a prior SSI benefits application that had been finally denied through October 22, 1999, and she did not reopen that application. [See AR 19-20].

The ALJ found that plaintiff had a severe impairment or combination of impairments, but that those impairments did not meet or equal a listed impairment. [AR 20-21, 24]. She determined that plaintiff's residual functional capacity ("RFC") had not changed since the prior unfavorable decision, and therefore she found that plaintiff could perform unskilled light work with no exposure to sharp objects and materials, no frequent pushing or pulling with both feet, no climbing unprotected ladders, ropes, and scaffolds, no working around unprotected heights and machinery, and no concentrated exposure to extreme cold, extreme heat, and vibrations. [AR 25]. Because the ALJ found that plaintiff's RFC did not preclude him from performing work that exists in significant numbers in the national economy, she concluded that plaintiff was not disabled. [AR 25]. The Appeals Council denied plaintiff's request for review of that decision. [AR 8-10].

The parties have stipulated that the ALJ fairly and accurately summarized the medical evidence and testimony of record, except as delineated by plaintiff in his brief. [JS 3-4].

**Statement of Disputed Issues**

The disputed issue is whether the ALJ erred in failing to fully and fairly develop the record.

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New

1  York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required
2  to review the record as a whole, and to consider evidence detracting from the decision as well
3  as evidence supporting the decision. Also, where the evidence is susceptible to more than one
4  inference, and one of which supports the ALJ's positions, ALJ's conclusion must be upheld.
5  Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035,
6  1039 (9th Cir. 1995).

**Discussion**

**Duty to develop the record**

9   Plaintiff's contends that the ALJ breached her duty to develop the record fully and fairly
10  with respect to the duration of the limiting effects of his September 2002 stroke, referred to in
11  the medical records as a cerebrovascular accident ("CVA"). [E.g., AR 377].

12  The ALJ has a "special duty to fully and fairly develop the record and to assure that the
13  claimant's interests are considered," even where, as here, "the claimant is represented by
14  counsel." Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003)(quoting Brown v. Heckler,
15  713 F.2d 441, 443 (9th Cir. 1983)); see Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir.
16  1996).  A claimant, however, retains the burden of proving that he is disabled. Mayes v.
17  Massanari, 276 F.3d 453, 459 (9th Cir. 2001). The ALJ's "duty to develop the record further
18  is triggered only when there is ambiguous evidence or when the record is inadequate to allow
19  for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-460  (9th Cir.
20  2001) (rejecting the argument that the ALJ breached his duty to develop the record as an
21  impermissible attempt to shift the burden of proving disability away from the claimant).

22  About five months before the hearing, plaintiff suffered a CVA.  He presented to the
23  Downey Regional Medical Center emergency room on September 20, 2002 complaining of
24  weakness, dizziness, and severe balance problems. After initially being treated for acute
25  labyrinthitis and released, he returned to the emergency room later that night and was admitted
26  with diagnoses of acute vertigo, intractable vomiting, diabetes mellitus, rule out brainstem
27  pathology, etc. [AR 340-347].  A neurologic examination revealed focal findings of motor
28  weakness, leading the attending neurologist to note the "definite possibility" that plaintiff had

suffered a brainstem or cerebellar infarct. [AR 347-349]. The occurrence of a stroke was confirmed on MRI by the presence of a 4 millimeter area of "acute to subacute ischemia in the right medulla." [AR 379]. After a 10-day hospital stay, plaintiff was discharged in "fair" condition with diagnoses of acute cerebrovascular accident, acute vertigo caused by acute CVA, and diabetes mellitus. [AR 377].

In October 2002, plaintiff saw Dr. Perez at a County of Los Angeles walk-in family medicine clinic for follow-up care. He complained of dizziness since his CVA, but that responded well to Antivert. Plaintiff was using a walker but requested a wheelchair for moving around at home due to his unsteady gait. A wheelchair was prescribed. [AR 409-410]. During a follow-up visit on November 7, 2002, plaintiff complained of a one-month history tingling sensation in his left leg. He complained of intermittent light-headedness but said it was much improved. He told his doctor that his strength in left extremities was gradually improving. [AR 406-407].

On January 23, 2003 (about a month before the hearing), plaintiff saw Dr. Perez again and complained of drowsiness since his stroke and left-sided numbness. He appeared "drawn and tired" and ambulated with a walker, as he had during earlier visits. [AR 381, 383]. On neurological examination, plaintiff exhibited an unsteady gait and left-sided motor weakness rated 2 out of 5. [AR 381]. On the same date, Dr. Perez signed a State of California Department of Social Services neurology questionnaire stating that plaintiff's onset of symptoms occurred September 20, 2002, and that he exhibited loss of use of left arm and left leg with decreased strength rated at 2/5, unsteadiness of gait, and sensory or motor abnormalities causing weakness in his left arm and left leg. [AR 375-376]. Dr. Perez commented that plaintiff "is status post cerebrovascular accident with residual weakness of left arm and leg, and unsteady gait (uses walker)." [AR 376].

During the hearing, plaintiff testified that he had been given the walker by Downey Regional Medical Center on his discharge. He said he had been using it since then and could not walk without it. [AR 57]. He said he could stand and walk only a minute or two with the walker before getting tired. [AR 57]. Plaintiff testified that he could not sit for two hours in

4

1  a row without moving because his legs became numb, and he said they were numb at the
2  present time. [AR 58-59]. He said he could not use his left arm and leg due to numbness,
3  tingling, and weakness, but added that he was right-handed and could use his right extremities.
4  [AR 59, 65-66]. Plaintiff said he was taking "a lot of medication" for his conditions and that
5  his medication made him drowsy and dizzy. He testified that he had fallen a couple of times
6  since he got out of the hospital. [AR 60]. Plaintiff said that he could not shower or bathe
7  without his girlfriend's help and had to use a chair. [AR 61-62]. He also testified that he did
8  not help with household chores or drive. [AR 62-64].

9        In deciding that plaintiff retained the same RFC as found in the October 1999 decision
10 denying his prior application for benefits, the ALJ applied the doctrine of res judicata to bar
11 reconsideration of plaintiff's disability through the date of that decision. [AR 19-20]. See Lester
12 v. Chater, 81 F.3d 821, 827 (9th Cir. 1995)(explaining that although applied less rigidly to
13 administrative than to judicial proceedings, the principles of res judicata apply to administrative
14 decisions). She also invoked the presumption of continuing nondisability that arises from a
15 prior final decision denying benefits. See Schneider v. Commissioner of Social Sec. Admin.,
16 223 F.3d 968, 973 (9th Cir. 2000)(explaining that a final determination that a claimant is not
17 disabled also creates a presumption that the claimant retains the ability to work after the date
18 of the prior administrative decision). The presumption of continuing non-disability may be
19 overcome by a showing of "changed circumstances," by new facts establishing a previously
20 unlitigated impairment or other apparent error in the prior determination, or where the
21 claimant's unrepresented status has resulted in an inadequate record. See Lester, 81 F.3d at
22 827-828; Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988).

23       The ALJ concluded that "[t]he current records show no change in the claimant's physical
24 impairments since ALJ Evans' [October 1999] decision despite a new impairment of a CVA."
25 [AR 20]. Because there had been "no change," the ALJ found that plaintiff had not rebutted
26 the presumption that he could do the same range of light work found by ALJ Evans in the prior
27 decision. [See AR 188-199]. The ALJ's evaluation of the evidence, however, is flawed.
28       The ALJ acknowledged that plaintiff had suffered a CVA in September 2002 with an

5

MRI showing acute-subacute ischemia. [AR 21].  She noted that his examinations on September 20, 2002  (when he was initially misdiagnosed) and September 21, 2002 do not show left-sided motor weakness, but that "one day later, Exhibit D-13/F2, dated January 22, 2003, shows 2/5 motor strength in left upper and lower extremities and unsteady gait." [AR 21]. To the extent the ALJ was purporting to highlight an inconsistency between the nearly contemporaneous findings, she made an obvious misstatement; the January 22, 2003 progress report came *four months* after plaintiff's September hospital evaluations, not one day.[2]  [See AR 347-349].  The ALJ then questioned the reliability of Dr. Perez's neurologic findings on January 22, 2003 because "[t]here is no indication about the claimant's effort with testing, and what kind of testing was done." [AR 21].  Those are not a valid reasons for questioning Dr. Perez's findings that plaintiff had impaired motor strength and unsteady gait.  Assessing motor strength on a 0 to 5 scale and assessing a patient's gait, as Dr. Perez did, are standard components of a neurological examination.  See The Merck Manual of Diagnosis and Therapy 1346-47 (17th ed. 1999)[3].  Furthermore, Dr. Perez gave no indication whatsoever that he questioned plaintiff's effort, and he reported those abnormal results in a report to the State of California Department of Social Services.   The ALJ also pointed out that plaintiff told Dr. Perez that his strength and light-headedness were improving, and that he was not undergoing "aggressive therapy" for his gait problem, weakness, or dizziness.  The ALJ concluded that "[t]here is no evidence that within 12 months of the CVA, and with compliance with appropriate rehabilitation treatment, the claimant will be unable to perform work within the residual functional capacity assessed by" the ALJ in his prior case. [AR 21].

The ALJ's assessment of the residual effects of plaintiff's CVA is problematic.  First, while

---

[2]  The discrepancy between the findings in September 2002 and January 2003 reports may be probative, but there simply is no evidence on that question, and in any case the ALJ incorrectly said that they were only one day apart.

[3]  Using one common 0 to 5 point scale, a "2" means that the patient can move that muscle group with the aid of gravity.  The Merck Manual of Diagnosis and Therapy 1347 (17th ed. 1999)

6

it is clear that the ALJ found that the residual effects of plaintiff's CVA did not meet the 12-month durational requirement,[4] it is not clear whether or not she also found that impairment to be severe because she did not specify which of plaintiff's impairments were severe, singly or in combination.  If the ALJ found that plaintiff's stroke-related impairments were not severe, that would be grounds for a remand because the record as a whole unquestionably demonstrates that status post-CVA, his ability to perform basic work-related impairments was more than minimally affected.  See Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)(stating that an impairment is not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have *no more than a minimal effect* on an individual's ability to work")(italics in original)(quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3);20 C.F.R. §§ 404.1521 (a), 416.921(a) (a severe impairment is one that significantly limits a claimant's physical or mental ability to do "basic work activities").[5]

        Second, substantial evidence does not support the ALJ's determination that plaintiff's stroke-related impairments would not persist at a severe level for twelve consecutive months. To support her durational finding, the ALJ pointed to weaknesses or inconsistencies the medical evidence that were illusory, such as the inconsistency she cited between his September 2002 examination results and results "one day later" in January 2003, or using the lack of superfluous

---

[4] Under the Social Security Act, a disabling condition must last, or be expected to last, no less than twelve consecutive months, or must be expected to result in death.  See 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.909; see also Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989).   Plaintiff bears the burden of proving that the twelve-month duration requirement is satisfied.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Young v. Sullivan, 911 F.2d 180, 181 (9th Cir. 1990); see 20 C.F.R. §§ 404.1509 & 416.909.

[5] Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, speaking, understanding, carrying out, and remembering simple instructions; (3) the use of judgment; and (4) the ability to respond appropriately to supervision, co-workers, and usual work situations.  20 C.F.R. §§ 404.1521(b), 416.921(b).

background information to question Dr. Perez's neurological findings. [AR 21]. The ALJ also inferred from plaintiff's reports of gradual improvement in his symptoms that those symptoms would be negligible within 12 months. Given plaintiff's testimony during the hearing about the persistence of his symptoms and the absence of evidence suggesting that those symptoms would soon abate, that was not a reasonable inference.

The ALJ's attempts to discredit plaintiff's testimony about the severity and persistence of his stroke-related impairments also are not borne out by the record. The ALJ said that plaintiff's complaints were out of proportion to the objective findings, but Dr. Perez found that plaintiff had markedly impaired left-side muscle strength and an unsteady gait, both of which are consistent with a neurological impairment. Plaintiff had been prescribed a walker and a wheelchair, and the uncontroverted evidence indicated that plaintiff was dependent on the walker to ambulate. The ALJ noted the absence of evidence of disuse muscle atrophy; however, the ALJ is not a medical expert, and there is no medical evidence that the absence of evidence of "disuse muscle atrophy" within four months after plaintiff's CVA is probative.

The ALJ also faulted plaintiff for not obtaining more aggressive treatment, and she concluded he could regain the ability to work if he complied with "appropriation rehabilitation treatment." [AR 21]. Plaintiff, however, did not have insurance, and he was dependent on his County doctors for follow-up care. [AR 66]. If plaintiff had not complied with prescribed, treatment that was available to him for his stroke-related impairments, or if his doctors did not prescribe treatment that ordinarily would be expected for the stroke-related injuries plaintiff alleged, then the ALJ's point might have had some force. As it stands, nothing in the record shows that plaintiff could have sought or obtained more or better treatment for his stroke-related impairments, or that he failed to comply with prescribed treatment that could have relieved his symptoms and restored his ability to work.

At a minimum, the ALJ should have augmented the record to buttress her finding that plaintiff's stroke-related impairments would not last for twelve consecutive months, such as by recontacting plaintiff's treating physician, ordering a neurological consultative examination, or by eliciting medical expert testimony. See Mayes, 276 F.3d at 459-460 ("An ALJ's duty to

develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.") (citing Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)). On the present record, the ALJ was unjustified in concluding that those symptoms would subside within a few months and that plaintiff would not be prevented from performing a narrowed range of light work. It follows that the ALJ erred in concluding that plaintiff did not show "changed circumstances" sufficient to rebut the presumption of continuing nondisability.

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

Remand for further proceedings is appropriate in this case to permit development of the record and a proper determination of the severity and duration of plaintiff's impairments following his CVA and their effect, if any, on plaintiff's ability to work.

### Conclusion

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards.  Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

DATED: August 9, 2005

/s/
_____
ANDREW J. WISTRICH
United States Magistrate Judge